**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| JOANN CUTAR, on behalf of herself and 383 other similarly-situated California residents,<br><br>Plaintiff,<br><br>v.<br><br>HRB DIGITAL LLC and HRB TAX GROUP, INC.,<br><br>Defendants. | Case No. 4:25-cv-00912-DGK |

**ANSWER AND COUNTERCLAIM TO PETITION FOR DECLARATORY JUDGMENT**

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, Defendants HRB Digital LLC and HRB Tax Group, Inc. ("Defendants" or "H&R Block"), by and through their undersigned counsel, hereby submit their answer to Plaintiff's Petition for Declaratory Judgment (the "Petition") and counterclaim. No answer is required with respect to the headings, prayers for relief and other contents of the Petition that do not set forth allegations of fact and are not included within numbered paragraphs.[1] Certain headings are recited below solely for ease of reference to relevant sections of the Petition.

## INTRODUCTION

1. H&R Block offers an online tax return program, called H&R Block Online, that is used by millions of people to prepare and file tax returns. But unbeknownst to those users, H&R Block secretly transmitted its users' sensitive information—including their federally protected tax return information—to one or more third parties, including the social media company Facebook

[1] For avoidance of doubt, to the extent any further answer is required to any headings, prayers of relief, or other contents of the Petition than is set forth herein, such aspects of the Petition are denied.

(now Meta). H&R Block did so using functionally invisible tracking technologies, such as the "Meta Pixel," that H&R Block surreptitiously built into the code for its webpages. According to independent, third-party investigators, H&R Block transmitted to Meta information on its users' health savings account usage and their dependents' college tuition grants and expenses, among other information.

**Answer: Defendants admit that H&R Block offers online tax preparation and filing services that are used by millions of people. Except as so admitted, the remainder of the paragraph is denied.**

2. H&R Block's secret transmission of user data was unlawful. Tax return information is protected under federal law. Moreover, the Claimants, all of whom are California residents, are entitled to be free from unauthorized and nonconsensual interception of their personal data and communications pursuant to the California Invasion of Privacy Act ("CIPA"), which prohibits both the interception of communications and tracking data, as well as aiding and abetting such interception.

**Answer: The above paragraph does not contain factual allegations to which a response is required, but rather sets forth legal conclusions and opinions. To the extent a response is required, denied.**

3. In light of such conduct, Claimants wish to pursue and have attempted to pursue claims against H&R Block based on H&R Block's surreptitious and unauthorized use of one or more tracking technologies within its H&R Block Online platform.

**Answer: Denied.**

4. But H&R Block has erected numerous roadblocks for those, like Claimants, who wish to hold H&R Block accountable for its unlawful conduct. H&R Block purports to require all users of its H&R Block Online platform to agree to binding, individual arbitration of all of their

claims against H&R Block. And if that were not burdensome enough, H&R Block has created even more hurdles to discourage and dissuade users from pursuing their claims, including (i) requiring would-be claimants to speak directly with H&R Block's counsel, (ii) prohibiting would-be claimants from obtaining, in arbitration, the same relief they could obtain in Court, and (iii) requiring would-be claimants to wait for years, possibly decades, before even being able to begin pursuing their claims based on the identity of the counsel who represent them (the "Challenged Terms").

**Answer: Denied.**

5. When Claimants sought to file arbitrations against H&R Block, H&R Block insisted their arbitration matters could not proceed in light of the Challenged Terms. Plaintiff, on behalf of herself and Claimants, therefore brings this action to obtain a declaratory judgment interpreting H&R Block's "Online Services Agreement," a copy of which is submitted herewith as Exhibit 1 (the "H&R Block Agreement" or "Agreement") and declaring that the Challenged Terms are invalid and unenforceable.

**Answer: Defendants admit that Plaintiff has brought a declaratory judgment action seeking to interpret certain terms in the H&R Block Online Services Agreement and admit that Exhibit 1 is a version of the Online Services Agreement. Except as so admitted, the remainder of the paragraph is denied.**

## PARTIES

6. Plaintiff is an individual who resides, and at all relevant times has resided, in San Jose, Santa Clara County, California.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of this paragraph, and thus deny it.**

7. Claimants are 383 California residents. At all relevant times, Claimants were residents and citizens of California.

**<u>Answer</u>: Defendants lack knowledge or information sufficient to form a belief about the truth of this paragraph, and thus deny it.** [2]

8. Respondent HRB Digital LLC is a Delaware limited liability company that maintains its principal place of business in Kansas City, Jackson County, Missouri. HRB Digital LLC may be served with process via its registered agent, CT Corporation System, 5661 Telegraph Road, Suite 4B, St. Louis, MO 63129-4275.

**<u>Answer</u>: Admitted.**

9. HRB Tax Group, Inc. is a Missouri corporation that maintains its principal place of business in Kansas City, Jackson County, Missouri. HRB Tax Group, Inc. may be served with process via its registered agent, CT Corporation System, 5661 Telegraph Road, Suite 4B, St. Louis, MO 63129-4275.

**<u>Answer</u>: Admitted.**

10. Upon information and belief, both HRB Digital LLC and HRB Tax Group, Inc. are subsidiaries of H&R Block, Inc., a publicly traded Missouri corporation with its principal place of business in Kansas City, Jackson County, Missouri.

**<u>Answer</u>: Admitted.**

11. Upon information and belief, Defendants and/or their predecessors, successors, and/or related affiliates owned, operated, supervised, and/or otherwise managed HRB's H&R Block Online platform.

[2] Without limitation to the foregoing, Defendants received 389 Notices of Dispute from Plaintiff's counsel, Hilliard Law, but lack knowledge or information sufficient to identify the 383 Claimants referenced throughout Plaintiff's Petition.

**<u>Answer</u>: Defendants admit that HRB Digital LLC operates H&R Block's online tax preparation and filing services. Except as so admitted, the remainder of the paragraph is denied.**

**JURISDICTION & VENUE**

12. This court has subject matter jurisdiction over all claims and causes of action asserted in this action.

**<u>Answer</u>: This paragraph does not contain factual allegations to which a response is required but rather sets forth legal conclusions and opinions. To the extent a response is required, Defendants admit that the Court has subject matter jurisdiction over at least some of the claims asserted in Count I – Declaratory Judgment. Except as so admitted, the remainder of the paragraph is denied.**

13. This Court has personal jurisdiction over Defendants because Defendants either reside in or, directly and/or through their related affiliates, subsidiaries, partners, or members, engage in foreseeable, intentional, continuous, and/or systematic contacts with the State of Missouri.

**<u>Answer</u>: This paragraph sets forth legal conclusions and opinions to which no response is required. To the extent a response is required, Defendants admit the factual allegations of this paragraph.**

14. Venue is proper in this judicial circuit pursuant to § 508.010.2 RSMo because, among other things, each Defendant maintains its principal place of business in Jackson County, Missouri.

**Answer: This paragraph sets forth legal conclusions and opinions to which no response is required. To the extent a response is required, Defendants admit the factual allegations of this paragraph.**

**FACTS COMMON TO ALL COUNTS**

15. H&R Block forces all users of the H&R Block Online platform to agree to the H&R Block Agreement.

**Answer: Denied.**

16. The Agreement states that all disputes and claims must be resolved in binding individual arbitration before the American Arbitration Association, and that most issues related to disputes and claims arising under the Agreement are for an arbitrator to decide, but that "issues relating to the arbitrability of disputes and the validity enforceability, and scope of this Arbitration Agreement ... shall be decided by a court and not an arbitrator." Ex. 1, § 11.1.

**Answer: Defendants state that the Online Services Agreement speaks for itself, and deny any and all allegations that are inconsistent with, mischaracterize, misrepresent, or misinterpret the terms of the Online Services Agreement. To the extent a further response is required, denied.**

17. The Agreement further states that parties consent to the exclusive jurisdiction and venue of the courts in Kansas City, Missouri for disputes regarding the interpretation of the Agreement. Ex. 1, § 11.6.

**Answer: Defendants state that the Online Services Agreement speaks for itself, and deny any and all allegations that are inconsistent with, mischaracterize, misrepresent, or misinterpret the terms of the Online Services Agreement. To the extent a further response is required, denied.**

## COUNT I – DECLARATORY JUDGMENT

*Background*

18. Plaintiff and Claimants are California residents who wish to arbitrate with H&R Block as a result of H&R Block's surreptitious and unauthorized transmission of Claimants' information and communications, including Claimants' federally-protected tax return information, to one or more social media and other Internet companies. Claimants intend to allege violations of the California Invasion of Privacy Act ("CIPA") and negligence, and will request actual damages (for negligence), statutory damages (under CIPA), individual injunctive relief (barring H&R Block from engaging in the complained-of conduct as to Claimants), and public injunctive relief (barring H&R Block from engaging in the complained-of conduct as to anyone).

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of this paragraph, and thus deny it.**

19. But, as the United States District Court for the Northern District of California very recently confirmed—in a decision that specifically addressed H&R Block's Agreement, and applied governing California law to it—H&R Block crafted its Agreement in a way that makes it unduly and impermissibly burdensome for Claimants to pursue such claims. *See Rios v. HRB Digital LLC*, 2025 WL 3003768 (N.D. Cal. Oct. 27, 2025).

**Answer: This paragraph does not contain factual allegations but rather characterizes legal authority and therefore no response is required. To the extent a response is required, denied.**

20. Claimants seek a declaration from the Court regarding three aspects of the Agreement so that they may proceed with their claims in arbitration.

**<u>Answer</u>: Admitted that Plaintiff is seeking a declaratory judgment but denied that Plaintiff or Claimants are entitled to such a judgment or any other relief. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph, and thus deny them.**

21. As between H&R Block and Claimants, and because Claimants are California residents, the Agreement is governed by California law. See Ex. 1, § 14.1 ("Governing law. Except as otherwise provided in the Arbitration Agreement, this Agreement is governed by, interpreted, construed, and enforced in accordance with the law of the state where you accepted this Agreement except to the extent inconsistent with or preempted by federal law.").

**<u>Answer</u>: Defendants state that the Online Services Agreement speaks for itself, and deny any and all allegations that are inconsistent with, mischaracterize, misrepresent, or misinterpret the terms of the Online Services Agreement. Defendants lack knowledge or information sufficient to form a belief about the truth of the assertion that Claimants are California residents, and Defendants deny the allegation on that basis. The assertion that California law applies is not a factual allegation, but rather a legal conclusion to which no response is required. To the extent a response is required, denied.**

22. The Agreement also states that where, as here, more than 25 Claimants seek guidance from a Court regarding the interpretation and validity of H&R Block's Agreement, they may do so in "a single court proceeding[.]" Ex. 1, § 11.6. Accordingly, Plaintiff seeks the declarations set forth herein on her own behalf, and on behalf of all other Claimants.

**<u>Answer</u>: Defendants state that the Online Services Agreement speaks for itself, and deny any and all allegations that are inconsistent with, mischaracterize, misrepresent, or misinterpret the terms of the Online Services Agreement. Defendants admit that Plaintiff is**

**seeking a declaratory judgment on her own behalf and on behalf of all other Claimants. Except as so admitted, the remainder of the paragraph is denied, including without limitation any express or implied allegation that Plaintiff is entitled to a declaratory judgment or any other relief on behalf of herself or others.**

*Issue #1: The Agreement Impermissibly Precludes Public Injunctive Relief*

23. The Agreement purports to require that "[a]ll arbitrations shall proceed on an individual basis." Ex. 1, § 11.4.

**Answer: Defendants state that the Online Services Agreement speaks for itself, and deny any and all allegations that are inconsistent with, mischaracterize, misrepresent, or misinterpret the terms of the Online Services Agreement.**

24. The Agreement states that arbitrators can grant "the same remedies available in court, including ... declaratory, injunctive, and equitable relief." (*Id.*) In the very next sentence, though, the Agreement precludes arbitrators from granting the same relief available in court: "However, the arbitrator's rulings or any relief granted must be individualized to you and shall not apply to or affect any other client." *Id.*

**Answer: Defendants state that the Online Services Agreement speaks for itself, and deny any and all allegations that are inconsistent with, mischaracterize, misrepresent, or misinterpret the terms of the Online Services Agreement.**

25. Taken together, these terms in the Agreement preclude Claimants from seeking public injunctive relief and, as such, violate governing California law, including a California statute and a longstanding California legal doctrine called the *McGill* Rule.

**Answer: This paragraph does not contain factual allegations to which a response is required, but rather sets forth a legal conclusion. To the extent a response is required, denied.**

26. California Civil Code § 3513 provides: "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." Cal. Civ. Code § 3513.

**Answer: This paragraph does not contain factual allegations to which a response is required, but rather purports to quote a statute. To the extent a response is required, Defendants state that the statute speaks for itself, and deny any and all allegations that are inconsistent with, mischaracterize, misrepresent, or misinterpret California law or its potential application to the arbitration agreement in the Online Services Agreement.**

27. Applying this statute, the California Supreme Court held in *McGill v. Citibank*, N.A., 393 P.3d 85, 93 (Cal. 2017), that a pre-dispute arbitration agreement that prohibited individuals from seeking public injunctive relief was "invalid and unenforceable under state law insofar as it purports to waive [the customer's] statutory right to seek" public injunctive relief.

**Answer: This paragraph does not contain factual allegations to which a response is required, but rather characterizes legal authority. To the extent a response is required, Defendants state that the legal authority speaks for itself, and deny any and all allegations that are inconsistent with, mischaracterize, misrepresent, or misinterpret California law or its potential application to the arbitration agreement in the Online Services Agreement.**

28. California law—which, again, governs this dispute (see Ex. 1, § 14.1)—provides an absolute, unwaivable right to seek public injunctive relief, which is defined as "injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill v. Citibank, N.A.*, 393 P.3d at 87.

**Answer: This paragraph does not contain factual allegations to which a response is required, but rather characterizes legal authority. To the extent a response is required,**

**Defendants state that the legal authority speaks for itself, and deny any and all allegations that are inconsistent with, mischaracterize, misrepresent, or misinterpret California law or its potential application to the arbitration agreement in the Online Services Agreement.**

29. The California Supreme Court explained that the *McGill* Rule is implicated where, as here, an agreement (1) requires arbitration of all disputes, (2) limits the relief that an arbitrator can grant to only individual relief, and (3) prohibits any form of class or representative relief. 393 P.3d at 87–88.

**Answer: This paragraph does not contain factual allegations to which a response is required, but rather characterizes legal authority. To the extent a response is required, denied.**

30. The *McGill* Court further explained that "[t]he contract defense at issue here—a law established for a public reason cannot be contravened by a private agreement (Cal. Civ. Code § 3513)—is a generally applicable contract defense, i.e., it is a ground under California law for revoking any contract." 393 P.3d at 94 (internal quotations omitted).

**Answer: The above paragraph does not contain factual allegations to which a response is required, but rather characterizes legal authority. To the extent a response is required, Defendants state that the legal authority speaks for itself, and deny any and all allegations that are inconsistent with, mischaracterize, misrepresent, or misinterpret California law or its potential application to the arbitration agreement in the Online Services Agreement.**

31. Under governing California law, the Agreement violates the *McGill* Rule because it (1) requires arbitration of all disputes, (2) limits the relief that an arbitrator can grant to only individual relief, and (3) prohibits any form of class or representative relief. *See* Ex. 1, § 11.4.

**<u>Answer</u>: This paragraph does not contain factual allegations but rather asserts a legal conclusion, and therefore no response is required. To the extent a response is required, denied.**

32. The Agreement's violation of the *McGill* Rule is a ground under California law for revoking any contract, *McGill*, 393 P.3d at 94, and Claimants therefore are entitled to revoke the portions of the Agreement purporting to limit Claimants' ability to seek public injunctive relief.

**<u>Answer</u>: This paragraph does not contain factual allegations but rather asserts legal conclusions, and therefore no response is required. To the extent a response is required, denied.**

33. Further, it appears H&R Block *knowingly* and *intentionally* violates the *McGill* Rule, insofar as it acknowledges in the Agreement that public injunctive relief may be available as a remedy yet still precludes users from seeking it. *See* Ex. 1, § 11.4 (acknowledging that "a court" may "decide[] that applicable law precludes enforcement of any of this section's limitations as to a particular claim or any particular request for a remedy for a claim (such as a request for public injunctive relief)"). But regardless of H&R Block's motivation, the Agreement violates the *McGill* Rule, and the Agreement's improper terms are subject to revocation by Claimants on that basis.

**<u>Answer</u>: Denied.**

34. The United States Court of Appeals for the Ninth Circuit has confirmed both that (1) a contract purporting to waive the right to seek public injunctive relief is invalid and unenforceable under California law, and (2) the FAA "does not preempt the *McGill* rule." *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 824, 830–31 (9th Cir. 2019).

**<u>Answer</u>: This paragraph does not contain factual allegations to which a response is required, but rather characterizes legal authority. To the extent a response is required, Defendants state that the legal authority speaks for itself, and deny any and all allegations that are inconsistent with, mischaracterize, misrepresent, or misinterpret California law, principles of federal preemption under the Federal Arbitration Act, or their potential application to the arbitration agreement in the Online Services Agreement.**

35. Accordingly, Claimants seek a declaratory judgment from this Court that Section 11.4 of the Agreement is invalid and unenforceable as a matter of law.

**<u>Answer</u>: Admitted that Plaintiff is seeking a declaratory judgment but denied that Plaintiff or Claimants are entitled to such a judgment or any other relief.**

*<u>Issue #2: The Agreement Impermissibly Requires Claimants to Speak with H&R Block's Counsel, In Violation of Ubiquitous Ethical Rules and Public Policy</u>*

36. The Agreement purports to require Claimants to "personally participate in" an "Informal Settlement Conference" as a condition precedent to arbitration. *See* Ex. 1, § 11.2(B).

**<u>Answer</u>: Defendants state that the Online Services Agreement speaks for itself, and deny any and all allegations that are inconsistent with, mischaracterize, misrepresent, or misinterpret the terms of the Online Services Agreement. To the extent a further response is required, denied.**

37. The Agreement states that H&R Block's counsel "may also participate" in the Informal Settlement Conference. *Id*. In other words, H&R Block requires Claimants to personally attend meetings with H&R Block *and its counsel* as a condition precedent to arbitration. *See id*.

**Answer: Defendants state that the Online Services Agreement speaks for itself, and deny any and all allegations that are inconsistent with, mischaracterize, misrepresent, or misinterpret the terms of the Online Services Agreement. To the extent a further response is required, denied.**

38. This purported requirement—that Claimants attend a meeting with H&R Block's counsel as a condition to seeking relief in arbitration—is invalid and unenforceable because it violates applicable Rules of Professional Conduct and contravenes public policy.

**Answer: This paragraph does not contain factual allegations but rather asserts legal conclusions, and therefore no response is required. To the extent a response is required, denied.**

39. Attorney ethics rules throughout the United States prohibit counsel for one party (*e.g.*, H&R Block) from speaking with a represented party opponent (e.g., a Claimant) unless counsel for the latter gives prior consent. For example, in California (where Claimants are residents, and the law of which governs here), State Bar Rule of Professional Conduct 4.2(a) provides that "a lawyer shall not communicate directly or indirectly about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, *unless the lawyer has the consent of the other lawy*er." Cal. St. Bar R. Prof. Conduct 4.2(a) (emphasis added). Likewise, in Missouri, Rule of Professional Conduct 4-4.2 states: "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, *unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order*." Mo. R. Bar R. 4-4.2 (emphasis added).

**Answer: This paragraph does not contain factual allegations but rather asserts legal conclusions and characterizes rules of professional conduct, and therefore no response is required. To the extent a response is required, Defendants state that the rules speak for themselves, and deny any and all allegations that are inconsistent with, mischaracterize, misrepresent, or misinterpret the rules or their application to the Online Services Agreement or Defendants' counsel.**

40. In other words, H&R Block's lawyers are barred from speaking with Claimants unless Claimants counsel give prior consent, even if Defendants believe a Claimant previously consented to such communications in the Agreement. The Rules themselves make this clear. See, e.g., Mo. R. Bar R. 4-4.2, cmt. [3] ("Rule 4-4.2 applies even though the represented person initiates or consents to the communication."); Cal. St. Bar R. Prof. Conduct 4.2(a), cmt. [1] ("This rule applies even though the represented person initiates or consents to the communication.").

**Answer: This paragraph does not contain factual allegations but rather asserts legal conclusions and characterizes rules of professional conduct, and therefore no response is required. To the extent a response is required, Defendants state that the rules speak for themselves, and deny any and all allegations that are inconsistent with, mischaracterize, misrepresent, or misinterpret the rules or their application to the Online Services Agreement or Defendants' counsel.**

41. Nevertheless, here, *after* several Claimants objected to H&R Block's improper requirement that they attend personal meetings with H&R Block and its counsel and attempted to initiate arbitration with H&R Block, H&R Block insisted that the arbitrations could not proceed because, *inter alia*, those Claimants did not personally attend meetings with H&R Block and its counsel.

**<u>Answer</u>: Denied.**

42. Contracts that violate the Rules of Professional Conduct violate public policy and are invalid and unenforceable on that basis. *See, e.g.*, *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 425 P.3d 1, 9 (Cal. 2018) ("As particularly relevant here, California courts have held that a contract or transaction involving attorneys may be declared unenforceable for violation of the Rules of Professional Conduct, the set of binding rules governing the ethical practice of law in the State of California."); *Hance v. Super Store Indus.*, 44 Cal. App. 5th 676, 688 (Cal. Ct. App. 2020) (contractual provision "must be deemed unenforceable as in violation of public policy, to the extent it" violates applicable Rules of Professional Conduct).

**<u>Answer</u>: This paragraph does not contain factual allegations but rather asserts legal conclusions and characterizes legal authority, and therefore no response is required. To the extent a response is required, Defendants state that the legal authority speaks for itself, and deny any and all allegations that are inconsistent with, mischaracterize, misrepresent, or misinterpret California law or its potential application to the arbitration agreement in the Online Services Agreement.**

43. Because H&R Block's Agreement violates attorney ethics rules and public policy by purporting to require Claimants to speak directly with H&R Block's counsel, H&R Block's so-called "Informal Settlement Conference" requirement is invalid. Accordingly, Claimants seek a declaratory judgment from this Court that Section 11.2(B) of the Agreement is invalid and unenforceable as a matter of law.

**<u>Answer</u>: Admitted that Plaintiff is seeking a declaratory judgment but denied that Plaintiff or Claimants are entitled to such a judgment or any other relief. To the extent a further response is required, denied..**

*Issue #3: The Agreement Impermissibly Delays Resolution of Claims*

44. H&R Block's Agreement also contains a "bellwether" clause that delays and discourages Claimants from pursuing claims in arbitration and punishes Claimants for selecting the same counsel to represent them against H&R Block.

**Answer: Denied.**

45. The Agreement states that, "[i]f 25 or more claimants submit Notices or seek to file arbitrations raising similar claims and are represented by the same or coordinated counsel (regardless of whether the cases are submitted simultaneously) ... all of the cases must be resolved in arbitration in stages using staged bellwether proceedings...." Ex. 1, § 11.6.

**Answer: Defendants state that the Online Services Agreement speaks for itself, and deny any and all allegations that are inconsistent with, mischaracterize, misrepresent, or misinterpret the terms of the Online Services Agreement. To the extent a further response is required, denied.**

46. In the first stage, only 30 arbitration claims may be submitted, with H&R Block choosing 15 of those claims—*i.e.*, H&R Block chooses its adversaries in those arbitrations. And, "[i]n the meantime, no other cases may be filed in arbitration, and the AAA shall not accept, assess or demand fees for, or administer arbitrations that are commenced in violation of this section." Ex. 1, § 11.6. Further still, each of the initial 30 matters must be assigned to a different arbitrator. Id.

**Answer: Defendants state that the Online Services Agreement speaks for itself, and deny any and all allegations that are inconsistent with, mischaracterize, misrepresent, or misinterpret the terms of the Online Services Agreement. To the extent a further response is required, denied.**

47. Only after all 30 claims have been resolved can the next tranche of Claimants pursue their own claims in arbitration. Ex. 1, § 11.6. Thus, hundreds of individuals would be left waiting on the sidelines, unable to pursue their claims against H&R Block for at least many months, and possibly many years.

**<u>Answer</u>: Denied.**

48. Even if those Claimants are willing to wait in line for an unknown period of time to finally have an opportunity to arbitrate, their claims must be assigned to an arbitrator that did not previously hear a prior-tranche claim, if at all possible. *See id*. ("arbitrators who were previously assigned cases may be appointed to new cases," but only "to the extent required if the AAA does not have a sufficient number of arbitrators available"). Thus, Claimants who are sidelined are not waiting so that they can receive the benefit of an arbitrator who is familiar with common claims and issues; instead, H&R Block is insisting upon delay for the sake of delay.

**<u>Answer</u>: Denied.**

49. Courts addressing such "bellwether" provisions under governing California law have deemed them invalid and unenforceable for numerous reasons. This Court should do the same, and for the same reasons.

**<u>Answer</u>: The above paragraph does not contain factual allegations but rather asserts legal conclusions, and therefore no response is required. To the extent a response is required, denied.**

50. ***First***, and most obviously, the bellwether provision will significantly delay Claimants' and others' ability to pursue their claims against H&R Block. Even focusing just on Claimants here, H&R Block's bellwether provision would require at least four "rounds" of arbitration—with numerous Claimants having to wait many years before even *beginning* to pursue

their claims against H&R Block in arbitration by filing matters with the AAA. **That is what led a federal court in California to declare H&R Block's bellwether provision invalid and unenforceable, just this Fall.** *See Rios*, 2025 WL 3003768, at *10 (applying California law to H&R Block's Agreement and finding "consequences" from H&R Block's "staged bellwether process are likely to contribute to significant delays").

**<u>Answer</u>: Denied.**

51. And that is just for the Claimants who have tried to file claims using the same counsel to date. Analyzing (and rejecting) a similar bellwether provision, the United States District Court for the Northern District of California explained that "courts routinely consider the chilling effect" not only on those individuals who filed suit challenging a bellwether provision, but on "non-parties who may yet seek to vindicate their rights," as well. *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1041 (N.D. Cal. 2022) (collecting cases and explaining further that "these cases indicate that courts may consider the chilling effect of an arbitration clause on individuals to whom it would apply but are not currently plaintiffs").

**<u>Answer</u>: The above paragraph does not contain factual allegations but rather asserts legal conclusions and characterizes legal authority, and therefore no response is required. To the extent a response is required, denied.**

52. According to H&R Block, more than 20 million clients filed taxes with H&R Block in 2023, and only half of them did so in-person at an H&R Block office—meaning the other half (i.e., about 10 million H&R Block users) filed taxes another way, including through H&R Block online, and thus were subjected to surreptitious monitoring and interception of their information (including federally protected tax return information) due to H&R Block's misconduct. If even a

small fraction of those millions of users seek to pursue arbitration against H&R Block as a result, many of them would have to wait decades, if not centuries, before being able to pursue their claims

<u>**Answer**</u>**: Defendants admit that millions of people used H&R Block's in-person and online services in 2023. Except as so admitted, the remainder of the paragraph is denied.**

53. ***Second***, H&R Block's bellwether provision "effectively has a built-in asymmetry, with no apparent justification." *Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754, at *7 (N.D. Cal. Sept. 4, 2024), *aff'd*, 2025 WL 2463742 (9th Cir. Aug. 27, 2025). That is, this provision unfairly and unlawfully applies to H&R Block's users at a far higher occurrence rate than it could ever apply to H&R Block itself. It is predictable that an H&R Block user would have claims that would trigger the bellwether provision—for example, where H&R Block has a company policy or practice "that applies across-the-board to all" of its users, such as the practice at issue in Claimants' underlying claims, *i.e.*, surreptitiously allowing third parties to intercept H&R Block users' private communications and data. *Id.* at *6–7. H&R Block's company practice applies to all of its users, so that a user "who arbitrates her claim will likely be subject to the bellwether provision," because "the practical reality is that claims based on a company-wide policy affecting consumers will often be brought by law firms that represent a multitude of claimants, especially when the dollar amounts are small." *Id.* at *6. But, as the court in *Pandolfi* recognized, while is predictable that H&R Block's users would trigger the delay-for-delay's-sake bellwether provision, "it is far from clear that [H&R Block] would ever have claims that would trigger the provision." *Id.* at *7. Such contractual asymmetry should be rejected—particularly given the lack of bargaining power held by individual H&R Block users, like Claimants, compared to a billion-dollar company like H&R Block—and H&R Block's bellwether provision should be declared invalid and unenforceable.

**<u>Answer</u>: To the extent the above paragraph asserts legal conclusions and characterizes legal authorities, no response is required. Any remaining allegations are denied, including without limitation any express or implied allegation that Plaintiff is entitled to a declaratory judgment or any other relief on behalf of herself or others.**

54. ***Third***, H&R Block's bellwether provision interferes with Claimants' right to select the counsel of their choice, and effectively punishes Claimants based on their choice of counsel. Again, H&R Block's bellwether provision applies where Claimants "are represented by the same or coordinated counsel[.]" Ex. 1, § 11.6. Thus, "to avoid the bellwether provision, [users] would have to find different counsel, which affects the right to counsel of their choice or indeed, the ability to find any counsel at all: where the individual claims are small (as consumer claims often are), it may be difficult to find an attorney who represents only a single or small number of similarly situated clients." *Pandolfi*, 2024 WL 4051754, at *11. This, too, led a federal court in California to conclude that H&R Block's bellwether provision is invalid under California law. *Rios*, 2025 WL 3003768, at *10 ("Forcing claimants to avoid experienced counsel in favor of less qualified or experienced representation—simply to sidestep mass arbitration delays—imposes an unjustifiable cost manufactured by HRB for its sole benefit.").

**<u>Answer</u>: Defendants state that the Online Services Agreement speaks for itself, and deny any and all allegations that are inconsistent with, mischaracterize, misrepresent, or misinterpret the terms of the Online Services Agreement. The above paragraph also asserts legal conclusions and characterizes legal authorities, and therefore no response is required. To the extent a response is required, denied.**

55. ***Fourth***, and relatedly, while H&R Block's bellwether provision interferes with Claimants' right to use the counsel of their choice, H&R Block "is apparently free to select the same law firm to represent it in all of its arbitrations," and "is thus able to enjoy all of the advantages that come from being a 'repeat player,'" while Claimants are faced with an unacceptable choice: find other counsel (if you can), or sit on the sideline for months or years before you can pursue your claims. *MacClelland*, 609 F. Supp. 3d at 1042 (describing this lack of mutuality as "a paramount consideration" in evaluating arbitration terms) (internal quotation omitted).

**<u>Answer</u>: The above paragraph does not contain factual allegations but rather asserts legal conclusions and characterizes legal authority, and therefore no response is required. To the extent a response is required, denied.**

56. For all these reasons, Plaintiff and other Claimants will identify and explain as this matter proceeds, H&R Block's effort to delay Claimants from pursuing claims in arbitration through a bellwether provision should be rejected. *See, e.g.*, *Pandolfi*, 2024 WL 4051754, at *11 ("[T]he bellwether provision is clearly substantively unconscionable by itself."); *MacClelland*, 609 F. Supp. 3d at 1042 ("Delaying the ability of one to vindicate a legal claim by years ... 'conflict[s] with one of the basic principles of our legal system— justice delayed is justice denied.' Terms that 'contravene the public interest or public policy' are substantively unconscionable.") (quoting *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021) and *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016)).

**<u>Answer</u>: The above paragraph does not contain factual allegations but rather asserts legal conclusions and characterizes legal authority, and therefore no response is required. To the extent a response is required, denied.**

57. As referenced above, in late October of this year, the United States District Court for the Northern District of California *evaluated this very "bellwether" clause*, and—applying governing California law and the same principles outlined above—determined that H&R Block's bellwether clause is unconscionable and unenforceable. *See Rios*, 2025 WL 3003768 at *12 ("the unconscionable terms ... 'are designed to structurally and systemically make arbitration an inferior forum'") (quoting *Pandolfi*, 2024 WL 4051754, at *13).

**<u>Answer</u>: The above paragraph does not contain factual allegations but rather asserts legal conclusions and characterizes legal authority, and therefore no response is required. To the extent a response is required, denied.**

58. Accordingly, Claimants seek a declaratory judgment from this Court that Section 11.6 of the Agreement is invalid and unenforceable as a matter of law.

**<u>Answer</u>: Admitted that Plaintiff is seeking a declaratory judgment but denied that Plaintiff or Claimants are entitled to such a judgment or any other relief.**

## <u>AFFIRMATIVE DEFENSES</u>

As for their additional defenses, and without assuming any burden that they would not otherwise have, Defendants state as follows. Defendants reserve the right to assert additional defenses upon discovery of further information regarding Plaintiff's claims and upon the development of other relevant information.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff lacks standing to seek or is otherwise not eligible for a declaration that the Challenged Terms in the Online Services Agreement are unenforceable under California law on behalf of Claimants who did not use H&R Block's online tax preparation and filing services.

**SECOND AFFIRMATIVE DEFENSE**

Plaintiff lacks standing to seek or is otherwise not eligible for a declaration that the Challenged Terms in the Online Services Agreement are unenforceable under California law on behalf of Claimants who either do not or did not at the relevant times reside in California.

**THIRD AFFIRMATIVE DEFENSE**

Plaintiff lacks standing to seek or is otherwise not eligible for a declaration that the Challenged Terms in the H&R Block Online Services Agreement are unenforceable under California law because the Federal Arbitration Act preempts the state-law determinations Plaintiff urges the Court to adopt.

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiff cannot invoke California's *McGill* rule as a basis for invalidating portions of the arbitration agreement because neither Plaintiff nor Claimants are seeking public injunctive relief within the meaning of *McGill* and because the *McGill* rule is preempted by the Federal Arbitration Act.

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred in whole or in part by waiver, ratification, and/or estoppel. Plaintiff and Claimants have submitted Notices of Dispute asserting their intent to arbitrate, and Plaintiff and some Claimants and their counsel have participated in Informal Settlement Conferences under the terms of their arbitration agreements. Having substantially invoked the arbitration process, asserted an intent to arbitrate according to her agreement's terms, and/or already satisfied provisions she now purports to challenge, Plaintiff cannot turn around and attempt to repudiate selected provisions in the arbitration agreement.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by unclean hands. Plaintiff and Claimants have submitted Notices of Dispute asserting their intent to arbitrate, and Plaintiff and some Claimants and their counsel have participated in Informal Settlement Conferences under the terms of their arbitration agreements. Having substantially invoked the arbitration process, asserted an intent to arbitrate according to her agreement's terms, and/or already satisfied provisions she now purports to challenge, Plaintiff cannot turn around and attempt to repudiate selected provisions in the arbitration agreement.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because she lacks standing. Plaintiff and Claimants have submitted Notices of Dispute asserting their intent to arbitrate, and Plaintiff and some Claimants and their counsel have participated in Informal Settlement Conferences under the terms of their arbitration agreements. Having substantially invoked the arbitration process, asserted an intent to arbitrate according to her agreement's terms, and/or already satisfied provisions she now purports to challenge, Plaintiff lacks standing to seek relief.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrine of laches. Plaintiff and Claimants have submitted Notices of Dispute asserting their intent to arbitrate, and Plaintiff and some Claimants and their counsel have participated in Informal Settlement Conferences under the terms of their arbitration agreements. Plaintiff's delay in bringing this action is unreasonable and inexcusable. Defendants have been prejudiced by this delay at least because they have expended time and resources in participating in the Individual Settlement Conferences pursuant to provisions of the Online Services Agreement that Plaintiff now contests.

## COUNTERCLAIM

Defendants, by and through their undersigned counsel, hereby assert a counterclaim against Plaintiff respectfully requesting that the Court enter an order declaring that (1) the terms of the arbitration agreement in the Online Services Agreement ("OSA") are enforceable in full; and (2) Plaintiff and Claimants are required under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, to honor the terms of the arbitration agreement as written.

### BACKGROUND

1. Plaintiff and the Claimants are individuals purportedly represented by attorneys from the law firm of Hilliard Law ("Hilliard").

2. In May and June 2024, Hilliard sent individual Notices of Dispute to H&R Block on behalf of Plaintiff and other claimants asserting an intent to arbitrate. An exemplary notice (with personal information redacted) is attached as Exhibit A.

3. The Notices state that they are being sent "pursuant to and so as to comply with the H&R Block Terms of Service." Ex. A, at 1. The Notices do not object to the enforceability of any terms in the OSA's arbitration agreement. They also state that "Claimant intends to initiate arbitration proceedings" if the Claimant's claim is not resolved informally through the pre-arbitration informal settlement conference process set forth in the OSA. Ex. A, at 2.

4. Pursuant to Section 11.2(B) of the OSA, H&R Block timely requested an individual informal settlement conference with Plaintiff and each Claimant.

5. For several months, Plaintiff, Claimants and their counsel at Hilliard proceeded through the informal settlement conference process. Plaintiff and 117 of the Claimants each have completed an individual informal settlement conference with H&R Block, with their counsel at Hilliard present for each conference.

6. In January 2025, however, Hilliard canceled all future informal settlement conferences on behalf of the remaining Claimants, taking the position for the first time that the informal settlement conference process was unenforceable.

7. In February 2025, and in breach of both the informal settlement conference process in Section 11.2(B) of the OSA and the staged bellwethering procedures for resolving arbitrations of similar claims in Section 11.6 of the OSA, Hilliard submitted 383 arbitration demands to the American Arbitration Association on behalf of Plaintiff and additional Claimants. *See also* Pet. ¶ 5.

8. Defendants promptly objected to the improper arbitration filing. Thereafter, Hilliard withdrew the arbitrations.

9. Plaintiff subsequently filed this lawsuit, challenging three provisions (the "Challenged Terms") as unconscionable and unenforceable under California law: (1) the informal settlement conference process in Section 11.2(B) of the OSA; (2) the prohibition of so-called "public injunctive relief" in Section 11.4 of the OSA; and (3) the staged bellwethering process in Section 11.6 of the OSA.

**THE ARBITRATION AGREEMENT IN THE OSA IS VALID AND ENFORCEABLE**

10. Defendants reserve the right to challenge the application of California law to Plaintiff and each of the Claimants, including the right to challenge whether Plaintiff and each Claimant is a resident of California or was a resident of California at all relevant times.

11. Defendants also reserve the right to challenge the applicability of the version of the OSA attached to the Petition as to the claims of Plaintiff and each Claimant.

12. Even assuming California law applies and Plaintiff has attached the operative version of the OSA to the Petition, Plaintiff has the burden under California law of demonstrating that the Challenged Terms are *both* procedurally and substantively unconscionable. *Sanchez v. Valencia Holding Co.* 353 P.3d 741, 748-49 (Cal. 2015).

**The Arbitration Agreement in the OSA Is Not Procedurally Unconscionable**

13. The OSA contains an all-bold provision—in a conspicuous box titled "**Arbitration Agreement Opt Out**"—allowing users to opt out of arbitration within 30 days after accepting the OSA by filling out an online form or mailing a simple letter. Pet. Ex. 1 § 11. Applying California law, the Ninth Circuit has held that an "arbitration agreement is not adhesive if there is an opportunity to opt out of it." *Mohamed v. Uber Techs.*, *Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016).

14. Three other courts—including one applying California law—have rejected unconscionability challenges to the OSA's arbitration agreement for this reason and enforced the OSA's arbitration agreement in its entirety. *See Hunt v. Meta Platforms, Inc.*, 729 F. Supp. 3d 964 (N.D. Cal. 2025); *Pabon v. HRB Digital LLC*, 2025 WL 2254008 (E.D.N.Y. Aug. 7, 2025); *Caimano v. H&R Block*, 2024 WL 3295589 (E.D. Pa. July 3, 2024). Courts addressing similar opt-out provisions in other companies' contracts agree that a clear opt-out right negates procedural unconscionability under California law. *See*, *e.g.*, *Bonhomme v. Uber Techs., Inc.*, 2025 WL 1745729 (N.D. Cal. June 24, 2025); *Kaplan v. Athletic Media Co.*, 705 F. Supp. 3d 992 (N.D. Cal. Dec. 8, 2023); *Houtchens v. Google LLC*, 649 F. Supp. 3d 933 (N.D. Cal. 2023).

15. In addition, the arbitration agreement and its terms are conspicuously presented under clear headings, with the opt-out in a separate bolded box, and consumers are expressly informed of the arbitration clause when they accept the OSA.

16. Plaintiff and Claimants therefore have no basis for asserting procedural unconscionability.

**The Challenged Terms in the Arbitration Agreement in the OSA Are Not Substantively Unconscionable**

*Informal Settlement Conference Process (OSA 11.2(B))*

17. The informal-settlement-conference process in the OSA gives the parties a cost-free opportunity to resolve disputes informally. A similar requirement was part of the arbitration clause in *AT&T Mobility LLC v. Concepcion*, in which the Supreme Court treated that requirement as a *benefit* to consumers, not a burden. 563 U.S. 333, 336–37, 352 (2011). And the California Court of Appeals has held that a pre-arbitration notice of dispute process, with its accompanying potential for "informal" resolution, "is both reasonable and laudable in an [arbitration] agreement[.]" *Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 710 (2013).

18. Consumers benefit from pre-arbitration procedures. Here, H&R Block or its clients possess the contractual right to "request an individualized discussion," and consumers can therefore discuss their claims informally with an H&R Block "business representative." Pet. Ex. 1 § 11.2(B). Moreover, the pre-arbitration process serves an especially important role in the mass arbitration setting, where, despite a lawyer's professional obligations to investigate his or her clients' claims *before* asserting them (*see* ABA Model Rule 3.1; Fed. R. Civ. P. 11(b)), lawyers often submit a significant number of illegitimate or unvetted claims.

19. Plaintiff argues that the requirement that claimants personally participate in the informal settlement conference violates the rules of professional conduct. *No court* has ever accepted that argument, even though personal participation is a commonplace feature in many companies' contracts. Plaintiff's primary case, *Rios v. HRB Digital LLC*, 2025 WL 3003768 (N.D.

Cal. Oct. 27, 2025), *appeal pending*, No. 25-7199 (9th Cir.), did not go so far as to accept a similar argument made by the plaintiffs in that case.[3]

20. For good reason: the concern Rule 4.2 aims to prevent is improper *ex parte* access to a represented party. There is no danger of *ex parte* communications under the OSA's informal settlement conference process, because if a claimant has counsel, counsel can (and does) participate in the conference. And H&R Block's counsel do not communicate with represented parties without their counsel present.

21. Plaintiff and 117 of the Claimants have already participated in individual informal settlement conferences with their counsel present and without objection. Plaintiff's attack on the informal settlement conference process falls especially flat because it has already been amply demonstrated that the informal settlement conferences are conducted in accordance with counsel's professional obligations.

*Prohibition on Public Injunctive Relief (OSA 11.4)*

22. Plaintiff invokes California's *McGill* rule, but that rule does not apply here for the simple reason that Plaintiff and Claimants have not sought any relief that qualifies as a "public injunction" within the meaning of *McGill*. The relief they seek is by definition limited to H&R Block clients who use H&R Block's online tax preparation and filing services, and controlling Ninth Circuit precedent makes clear that injunctive relief primarily focused on a defendant's customers *is not* public injunctive relief, but rather private relief not subject to the *McGill* rule. *See Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 548–49 (9th Cir. 2021).

---

[3] As Defendants will argue in their pending Ninth Circuit appeal, *Rios*, which is not binding on this Court, is wrongly decided and its state-law holdings are preempted by the FAA.

23. In all events, as Judge Fenner has held, the *McGill* rule is preempted by the FAA. *See Swanson v. H&R Block, Inc.*, 475 F. Supp. 3d 967, 975–78 (W.D. Mo. 2020). As the court in *Swanson* made clear, courts in this District are "not bound by the Ninth Circuit" and "[t]he Eighth Circuit routinely disagrees with Ninth Circuit precedent." *Id.* at 978. Judge Fenner further explained that "[t]he *McGill* rule unfairly targets bilateral arbitration"—the type of arbitration protected by the FAA—"by restructuring the relief and proceedings from centering on one claimant to a putative class." *Id.*

*Staged Bellwethering Procedures (OSA 11.6)*

24. The use of staged bellwether proceedings provides a practical method for administering large numbers of individual arbitrations. The process is modeled on the approach used by MDL courts to resolve large numbers of individual lawsuits, promoting fairness and the orderly resolution of claims.

25. Borrowing from federal court procedures cannot be so "overly harsh or one-sided" as to be unconscionable. *Sanchez*, 353 P.3d at 748 (internal quotation marks omitted). To the contrary, bellwether proceedings promote fairness and orderly resolution of claims. Courts applying California law have upheld bellwether arbitration clauses. *See, e.g.*, *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 297-98 (S.D.N.Y. 2025); *Brooks v. WarnerMedia Direct, LLC*, 2024 WL 3330305, at *17-18 (S.D.N.Y. July 8, 2024); *Ruiz v. CarMax Auto Superstores, Inc.*, 2024 WL 1136332, at *6 (C.D. Cal. Jan. 18, 2024).

26. The FAA also preempts Plaintiff's state-law challenge to the staged bellwethering procedures. "[T]he FAA . . . preempts any state law rule discriminating on its face against arbitration," *Kindred Nursing Centers Limited P'Ship v. Clark*, 581 U.S. 246, 251 (2017), and the unconscionability rule against bellwether clauses adopted by some federal courts in California has

been invented solely for invalidating arbitration agreements. *See Oblix, Inc. v. Winiecki*, 374 F.3d 488, 492 (7th Cir. 2004) (FAA forbids states from applying "any novel rule" to invalidate "arbitration agreements"). California does not deem unconscionable MDL processes in court; indeed, California imposes its own similar process, called Judicial Council Coordination Proceedings, in state courts. *See* Cal. R. Ct. 3.501-50. California therefore cannot adopt an "arbitration-specific" rule against agreements to use similar MDL processes in arbitration. *Kindred*, 581 U.S. at 254.

**PRAYER FOR RELIEF**

**WHEREFORE,** Defendants request that the Court enter the following relief in favor of Defendants:

a. An order declaring that (1) the terms of the arbitration agreement in the Online Services Agreement ("OSA") are enforceable in full; and (2) Plaintiff and Claimants are required under the Federal Arbitration Act to honor the terms of the arbitration agreement as written; and

b. Any other relief that the Court deems just and proper.

Dated: December 9, 2025

Respectfully submitted,

**BERKOWITZ OLIVER LLP**

By: */s/ Stacey R. Gilman*
Anthony J. Durone, MO Bar #43872
Stacey R. Gilman, MO Bar #55690
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
Telephone: (816) 561-7007
Facsimile: (816) 561-1888
adurone@berkowitzoliver.com
sgilman@berkowitzoliver.com

***Attorneys for Defendants HRB Digital LLC and HRB Tax Group, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2025, the above and foregoing was filed on the Court's CM/ECF system, which provided notice of said filing to all counsel of record. I additionally certify that I served the above and foregoing document on the following via electronic mail and U.S. First Class mail:

Jeffrey A. Kennard
SCHARNHORST AST KENNARD GRIFFIN, PC
1100 Walnut, Suite 1950
Kansas City, MO 64106
jkennard@sakg.com

Robert C. Hilliard
Benjamin R. O'Connor
HILLIARD LAW
719 S. Shoreline Blvd.
Corpus Christi, TX 78401
bobh@hilliard-law.com
boconnor@hilliard-law.com

*Attorneys for Plaintiff*

*/s/ Stacey R. Gilman*
***Attorney for Defendants HRB Digital LLC and HRB Tax Group, Inc.***